

**40 Fulton Street, 12th Floor**
**New York, New York 10038**
**Tel.: (212) 585-3425**
**Fax: (888) 332-5658**
www.kishnerlegal.com

November 22, 2021

**VIA PACER**

The Honorable Margo K. Brodie
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

> Re:   *Eric Bieber v. Cayuga Capital Management, LLC, et al.*
>       Case No. 21-cv-5268

Dear Judge Brodie:

We represent Defendants Cayuga Capital Management, LLC ("Cayuga"), Sea Wolf Services, LLC ("SWS"), and Jacob Sacks and James Wiseman (the "Individual Defendants" and all collectively "Defendants") in this matter. We write pursuant to Rule 3.A. of the Court's Individual Practices to request a pre-motion conference in anticipation of Defendants' intended motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and to briefly outline the basis for that motion.

As an initial matter, Mr. Sacks and Mr. Wiseman, as individuals, and Cayuga must be dismissed from this action. As to Mr. Sacks and Mr. Wiseman, courts have declined to hold individuals liable under the FCA, specifically holding that "[the FCA] does not create a [retaliation] cause of action against supervisors sued in their individual capacities." *Diffley v. Bostwick*, No. 17-CV-1410 (ALC), 2017 WL 6948358, at *2 (S.D.N.Y. Dec. 6, 2017); *see also United States ex rel. Brumfield v. Narco Freedom, Inc*., No. 12-CV-3674 (JGK), 2018 WL 5817379, at *2 (S.D.N.Y. Nov. 6, 2018). Plaintiff cannot pursue his FCA retaliation claim against the Individual Defendants.

Plaintiff also cannot maintain a cause of action against Cayuga. The Complaint at most alleges that the Individual Defendants own and manage each of these entities. The Complaint deliberately evades alleging for what entity the Individual Defendants were purportedly acting

November 22, 2021
- Page 2 -

with respect to Plaintiff's employment, and elides the entity distinction between SWS and Cayuga.  While two companies may in theory be held liable as an employer under the FCA under a "joint employer" theory, the key relevant factors to consider include whether the alleged joint employer undertook hiring and firing, administered discipline, maintained records of hours, handled payroll or provided insurance and directly supervised the employees.  *See Lawrence v. Int'l Bus. Mach. Corp.*, No. 12-CV-8433 (DLC), 2017 WL 3278917, at *5 (S.D.N.Y. Aug. 1, 2017).

The Complaint fails to make any allegations regarding Cayuga's operational relationship with SWS as concerned Plaintiff's employment, and while Plaintiff alleges that Cayuga was his employer at all material times, he contradicts that allegation by stating that he was paid by SWS during the time that he allegedly reported the purported fraud and supposedly suffered retaliation (Compl. ¶ 18).  Plaintiff does not allege what entity hired him, only that he was initially hired by the Individual Defendants (Compl. ¶¶ 12, 21) and he admits that he was paid by SWS during the relevant time period.  He makes no allegations with respect to the remaining factors.  He has thus failed to plead facts sufficient to show that Cayuga was a joint employer and Cayuga should be dismissed from the case.

The Complaint's overarching failure is that it fails to state a claim under the anti-retaliation provisions of the FCA.  The Complaint's bare and cursory allegations fail the requirements of Federal Rule of Civil Procedure 8 and the requisites of a prima facie FCA retaliation complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("unadorned" accusation in complaint insufficient); *Adiram v. Cath. Guardian Servs*., No. 13-CV-6235-SLT-JO, 2015 WL 5706935, at *3, 5 (E.D.N.Y. Sept. 28, 2015).  While the Complaint is 89 paragraphs long there are only two paragraphs (Compl. ¶¶ 46, 51) that address the supposed operative wrongdoing by Defendants that is the subject of the cause of action.  Paragraph 46 only alleges:

> On or around June 10, 2020, a little over a month after the PPP loan was distributed to Sea Wolf Services, Mr. Bieber noticed that the roster of employees in the payroll database included eight individuals who did not work at any of the restaurants, but had personal connections to Mr. Wiseman and Mr. Sacks, including business partners and relatives….

But Plaintiff's belief that an employee did not work *at* a restaurant has nothing to say about whether the employee worked *for* a restaurant, particularly when Plaintiff himself alleges that staffers were working remotely during the pandemic.  *See* Compl. ¶ 37.

Thus Plaintiff's subsequent allegation that these individuals "did not work *for* any of the restaurants," (Compl. ¶ 46 (emphasis added)) is a wholly speculative exercise in conclusion-jumping.  There is no basis to for his supposed belief that Defendants had committed any violation, as these individuals could have nonetheless worked *for* the restaurants' offsite, particularly during the height of the pandemic.  *See Adiram*, 2015 WL 5706935 at *3, 5

November 22, 2021
- Page 3 -

("[c]onclusory allegations such as this do not support an inference that Plaintiffs were engaged in any conduct in furtherance of an action under [the FCA] or other efforts to stop" a violation). An FCA plaintiff must show that (1) the employee in good faith believes, or (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.  *New York ex rel. Khurana v. Spherion Corp*., 511 F. Supp. 3d 455, 473 (S.D.N.Y. 2021).

Here, Plaintiff does not provide any supporting detail and cites to no facts that supports his belief in the alleged fraud – indeed, he claims to have gleaned this alleged knowledge solely from reviewing an employee roster and W-2s (Compl. ¶¶ 46, 50-51).  *That's it*.  He alleges no efforts to investigate or confirm his supposed concerns  The Complaint is bare of any allegations that Plaintiff sought to investigate, for example, the services the individuals were supposed to have provided, whether they in fact provided such services, or their pay.  At most, Plaintiff pleads merely the slightest soupçon of suspicion that he made no effort whatsoever to investigate or confirm.  This is not enough to demonstrate either subjective good faith or an objectively reasonable basis to conclude that Defendants had violated the FCA.  *See Khurana*, 511 F. Supp. 3d at 473-74.

Plaintiff's failure to undertake any investigation of the supposed wrongdoing is as fatal to his claim as is the subjective and objective unreasonability of his assertion of fraud.  "[I]t is not enough that an employee merely investigates his employer's non-compliance with federal regulations," but the employee must do something "beyond what was required of his position" in order for his behavior to be protected.  *Faldetta v. Lockheed Martin Corp*., No. 98-CV-2614(RCC), 2000 WL 1682759, at *12 (S.D.N.Y. Nov. 9, 2000); *see Khurana* at 474 (identifying such problems was the essence of Plaintiff's job as a load tester and quality assurance employee and thus, as a matter of law, such reports did not qualify as "protected activity").  Here, Plaintiff admits that his duties included distribution of payroll and W-2 forms (Compl. ¶¶ 37, 50), and his alleged discovery of "fraud" resulted from his assigned duties.  He alleges no investigation beyond his job duties.  Hence, he has not alleged that he did *anything* beyond his typical duties in investigating alleged fraud, and he fails to allege that he took any action protected by the FCA.

For these reasons, the Complaint fails to state a claim and should be dismissed.

Very truly yours,

Ryan O. Miller

November 22, 2021
- Page 4 -


cc:      Amy Biegelsen, Esq.
         OUTTEN & GOLDEN LLP
         685 Third Avenue, 25th Floor
         New York, NY  10017
         abiegelsen@outtengolden.com
         (via PACER)